IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAURA BORLEY,                          : Civil No. 1:25-CV-2066
                                       :
    Plaintiff,                         :
                                       :
        v.                             :
                                       : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                       :
Commissioner of Social Security,       :
                                       :
    Defendant.                         :

## MEMORANDUM OPINION

## I.    Introduction

Laura Borley filed an application under Title II of the Social Security Act for disability benefits on March 17, 2023.  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Borley was not disabled from her alleged onset of disability, March 1, 2022, through the date of the ALJ's decision, November 18, 2024.[1]

Borley now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, we agree and conclude that the ALJ's decision is not supported by

---

[1] Tr. 17-31.

substantial evidence.  Therefore, we will remand this matter for further consideration by the Commissioner.

## II.   Statement of Facts and of the Case[2]

Laura Borley filed for disability insurance benefits, alleging disability due to a herniated disc, chronic back pain, limited neck and shoulder mobility, diabetes, foot ulcers, neuropathy, multiple strokes, and MTHFR.[3]  Borley was 45 years old at the time of her alleged onset of disability, had a high school education, and had past work as a warehouse worker, home attendant, and child attendant.[4]

An ALJ held a hearing on Borley's disability application on August 20, 2024.[5]  Borley and a Vocational Expert ("VE") both appeared and testified at this hearing.[6]  Following this hearing, on November 18, 2024, the ALJ issued a decision denying Borley's application for disability

---

[2] We forego our usual recitation of the plaintiff's medical records, since as we will explain, we are remanding this matter based on the ALJ's failure to adequately explain why he discounted limitations opined by the medical providers regarding Borley's use of a cane.
[3] Tr. 76.
[4] Tr. 29.
[5] Tr. 36-75.
[6] *Id.*

benefits.[7]    The ALJ first concluded that Borley had not engaged in substantial gainful activity since her alleged onset of disability, March 1, 2022.[8]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Borley suffered from the following severe impairments: status post myocardial infarction and cerebrovascular accident, coronary artery disease, hypertension, palpitations, degenerative disc disease, herniation of the cervical spine, right-sided cervical radiculopathy, diabetes mellitus, diabetic ulcers, neuropathy, obstructive sleep apnea, venous insufficiency, and obesity.[9]  At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10]

Between Steps 3 and 4, the ALJ then concluded that Borley:

[H]a[d] the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, balance, stoop, kneel, crouch, and crawl, and can frequently feel with the right upper extremity.[11]

---

[7] Tr. 14-35.
[8] Tr. 20.
[9] *Id.*
[10] Tr. 21-23.
[11] Tr. 24.

3

In reaching this residual functional capacity ("RFC") determination, the ALJ considered the objective medical record, the medical opinion evidence, and Borley's reported symptoms. With respect to the medical opinion evidence, the ALJ considered the August 2023 consultative examining opinion of Dr. Ahmed Kneifati and found it generally unpersuasive.[12] Dr. Kneifati's opinion limited Borley to less than a full range of sedentary work and found that Borley required a cane for ambulation.[13] This opinion was based on Dr. Kneifati's examination of Borley, during which she used a cane and exhibited a waddling, short-stepped gait; she was unable to stand on her toes or walk on her heels and toes; and she could not walk without the cane "because of the neuropathy and poor balance and the recent burn on the foot."[14] The ALJ found that the evidence of record was not consistent with the sitting and standing limitations or the need to use a cane, reasoning that the record

---

[12] Tr. 27.
[13] Tr. 803.
[14] Tr. 795.

4

"lack[ed] clinical findings, . . . [and] her physical examinations findings are relatively unremarkable."[15]

The ALJ also considered an opinion signed by Borley's treating providers, Dr. Dimmock and Dr. Akhtar, and found this opinion unpersuasive.[16] This opinion similarly found that Borley could perform less than a full range of sedentary work and opined that Borley required a cane for standing and walking, among other limitations.[17] The ALJ reasoned that these restrictions were not warranted given the lack of clinical findings to support them.[18] Curiously, the ALJ further reasoned that this opinion was inconsistent with other evidence of record and specifically referenced Dr. Kneifati's consultative examination, which resulted in Dr. Kneifati's opinion that Borley required a cane.[19]

With respect to Borley's symptoms, the ALJ found that Borley's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical

---

[15] Tr. 27.
[16] Tr. 28.
[17] Tr. 1386-87.
[18] Tr. 28.
[19] *Id.*

evidence.[20]  Borley testified, *inter alia*, that she used a cane whenever she left home.[21]  She reported that without her cane, she was unsteady, and that she always had her cane because she was afraid she would fall.[22] The ALJ ultimately found Borley's testimony to be inconsistent with the objective clinical findings.[23]  With respect to her use of a cane, the ALJ reasoned that the evidence in the record did not support her need to use a cane, relying on certain records that showed findings of a normal gait and that the records "lack *consistent* documented use of an assistive device or any record of significant balance issues or falling."[24]  Ultimately, the ALJ found that Borley was not as limited as she alleged.[25]

Having made these findings, the ALJ found at Step 4 that Borley could not perform her past relevant work but found at Step 5 that she could perform the occupations of an order clerk, final assembler, and finisher.[26]  Accordingly, the ALJ found that Borley had not met the

---

[20] Tr. 25.
[21] Tr. 48.
[22] Tr. 55.
[23] Tr. 25.
[24] *Id.* (emphasis in original).
[25] *Id.*
[26] Tr. 30.

stringent standard prescribed for disability benefits and denied her claim.[27]

This appeal followed.[28]  On appeal, Borley argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider the medical opinion evidence.[29]  This case is fully briefed and is therefore ripe for resolution.  For the reasons set forth below, we agree and will remand this matter to the Commissioner for further consideration.

## III.  Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[30]  Substantial evidence "does not mean a large or considerable amount of evidence, but

---

[27] Tr. 31.

[28] Doc. 1.

[29] Doc.

[30] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[32]

A single piece of evidence is not substantial evidence if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence."[33]    However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[34]    The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[35]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

---

[31] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[32] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[33] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[34] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

[35] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[36]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[37]   Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[38]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[39]   Thus,

---

[36] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[37] Id.

[38] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[39] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[40]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[41]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[42]

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which

---

[40] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[41] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[42] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

has lasted or can be expected to last for a continuous period of not less than 12 months."[43] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[44] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[45]

In making this determination, the ALJ follows a five-step evaluation.[46] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able

---

[43] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[44] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[45] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[46] 20 C.F.R. §§404.1520(a), 416.920(a).

to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[47]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[48]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[49]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[50]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[51]  If met, the burden then shifts to

---

[47] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[48] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[49] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[50] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[51] *Mason*, 994 F.2d at 1064.

the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[52]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[53]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[54]

---

[52] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[53] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[54] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[55] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[56] Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[57]

---

[55] *Biller*, 962 F. Supp. 2d at 778–79.

[56] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[57] *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[58]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[59]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[60]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[61]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or

---

[58] 20 C.F.R. § 404.1520c(c).
[59] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).
[60] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[61] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[62]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[63]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[64]   On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[65]

## D. This Case Will be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[66] and the ALJ must "indicate in his decision which evidence he has rejected and

---

[62] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[63] *Mason*, 994 F.2d at 1066.
[64] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[65] *Cummings*, 129 F. Supp. 3d at 214–15.
[66] *Cotter*, 642 F.2d at 704.

16

which he is relying on as the basis for his finding."[67]   After consideration, we conclude that the ALJ's RFC determination is not supported by an adequate explanation.

Borley argues that the ALJ's consideration of the medical opinion evidence is not supported by substantial evidence.  She contends that the ALJ failed to properly consider the restrictions set forth in those opinions including, *inter alia*, that she required a cane to ambulate.   After consideration, while we believe this is a close case, we agree and conclude that the ALJ's decision in this regard is not supported by substantial evidence.

In some cases, the claimant's use of a cane may be outcome-determinative.  However, the burden lies with the claimant initially to show that the cane is medically required by providing "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]"[68]  If the claimant demonstrates such a medical necessity,

---

[67] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).
[68] *Howze v. Barnhart*, 53 F. App'x 318, 222 (3d Cir. 2002) (citing SSR 96-9p).

17

then the ALJ must directly "address the evidence concerning Plaintiff's use of" an assistive device.[69]  The failure to do so may require a remand.[70] Additionally, when the evidence demonstrates the medical necessity of the assistive device, and a vocational expert testifies that the claimant's use of an assistive device would render him or her unable to work, the ALJ must set forth the reasons for rejecting this expert testimony.[71]

Here, the only medical opinions in the record that set forth physical limitations for the plaintiff—those of Dr. Kneifati and the plaintiff's treating providers—opined that Borley required a cane for ambulation. Dr. Kneifati's opinion was based on his examination of Borley, during which she exhibited a waddling gait with her cane, and Dr. Kneifati noted that she was unable to walk without her cane due to her neuropathy and balance issues.[72]  In discounting this limitation, the ALJ simply referenced unspecific physical examination findings from the relevant

---

[69] *Steward v. Comm'r of Soc. Sec.*, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009).
[70] *Id.*
[71] *Altomare v. Barnhart*, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005).
[72] Tr. 795.

period and cited a lack of abnormal physical findings.[73]  Similarly, in discounting Borley's treating providers' opinion, the ALJ did not specifically discuss the providers' opinion that Borley needed a cane but instead generally dismissed the physical limitations in the opinion, citing a "lack [of] clinical findings" to support the limitations.[74]  In our view, such a general dismissal of opinion evidence is inadequate to explain why the ALJ discounted these providers' restriction that Borley required a cane to ambulate.

This inadequacy in the ALJ's explanation is compounded by his treatment of Borley's subjective symptoms.  In discounting Borley's testimony that she required a cane to ambulate, which was consistent with what her providers opined, the ALJ similarly cited to a lack of physical findings to support the need for a cane and reasoned that the record failed to show "consistent" use of a cane.[75]  However, in making this determination, the ALJ cited to several medical records that indicated Borley had an antalgic or abnormal gait and presented with a

---

[73] Tr. 27.

[74] Tr. 28.

[75] Tr. 25.

19

cane.[76] In addition, the record includes various references to Borley's use of a cane at her medical appointments.[77]   In our view, the ALJ's characterization of Borley's cane use as inconsistent, coupled with a generalized citation to a lack of clinical findings to support the need for a cane, is insufficient, particularly where the opinions regarding Borley's physical limitations all opined that a cane was necessary.[78]

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter.  Rather, that task is left to the ALJ on remand.

---

[76] *Id.* (citing e.g., Tr. 1336, 1532).

[77] *See e.g.*, 1153, 1328, 1335-36, 1367.

[78] *See Stahursky v. O'Malley*, 2024 WL 3204243, at \*11-12- (M.D. Pa. June 27, 2024) (remanding based on the ALJ's failure to consider or explain evidence of the plaintiff's cane use); *Wolabaugh v. Bisignano*, 2026 WL 561225, at \*8-9 (M.D. Pa. Feb. 27, 2026) (same).

## IV.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be remanded for further consideration consistent with this Memorandum Opinion.

An appropriate order follows.

Submitted this 20th day of May 2026.

*<u>s/ Daryl F. Bloom</u>*
Daryl F. Bloom
Chief United States Magistrate Judge
